IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| LAURA B. MOISE AND GREG MOISE, | ) |
| | ) |
| Plaintiffs, | ) C/A No. 3:12-cv-02022-MBS |
| | ) |
| vs. | ) |
| | ) |
| ALLIEDBARTON SECURITY SERVICES, LLC; COLUMBIANA CENTRE, LLC; AND GENERAL GROWTH PROPERTIES, INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is before the court on a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e) filed by Defendants Columbiana Centre, LLC and General Growth Properties, Inc ("GGP") (together "Mall Defendants") on July 16, 2015. ECF No. 116. Defendant AlliedBarton Security Services, LLC ("AlliedBarton") also filed a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e) on July 16, 2015. ECF No. 117. Plaintiffs Laura B. Moise and Greg Moise ("Plaintiffs") filed a response in opposition on August 3, 2015. ECF No. 123.

## I. FACTS

Plaintiffs brought this action seeking redress for injuries arising out of an incident that occurred on August 17, 2011, at the Columbiana Centre shopping mall. Plaintiff Laura Moise alleges that she was assaulted in the corridor outside of the ladies' restroom. Plaintiff Laura Moise indicates that after her struggle with the attacker, he ran out of the mall through the unlocked service doors that were nearby.

On June 18, 2012, Plaintiffs commenced this action in the Court of Common Pleas for Richland County, South Carolina, against Defendant AlliedBarton. The action was removed to this court on July 20, 2012, based on this court's diversity jurisdiction in this matter. ECF No. 1. On October 12, 2012, Plaintiffs filed an Amended Complaint adding GGP as a Defendant. ECF No. 24. On July 9, 2013, Columbiana Centre LLC was added as a Defendant pursuant to this court's order in response to a consent motion to substitute party filed July 9, 2013. ECF Nos. 50-51.

Pursuant to this court's order, the parties engaged in mediation but did not reach a resolution. ECF No. 90. Subsequently, AlliedBarton filed a motion for summary judgment on April 2, 2015. ECF No. 91. The following day, Mall Defendants filed a motion for summary judgment. ECF No. 92. Plaintiffs filed a response in opposition to both motions on April 29, 2015. ECF No. 96-97. Allied Barton filed a reply to Plaintiffs' response on May 12, 2015. ECF No. 105. That same day, Columbiana Centre and GGP also filed a reply to Plaintiffs' response. ECF No. 106.

On June 18, 2015, this court held a hearing on the motions for summary judgment. ECF No. 114. The court found that there was a dispute of material fact and that Defendants were not entitled to judgment as a matter of law. As a result, the court denied Defendants' respective motions for summary judgment. ECF No. 114. Defendants now request that this court reconsider its prior ruling on the motions for summary judgment.

## II. LEGAL STANDARDS

*A. Rule 59(e) Standard*

Reconsideration of a judgment after its entry is an extraordinary remedy. *Pacific Ins. Co.*

2

*v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).   A court may alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) to (1) accommodate an intervening change in the controlling law; (2) account for new evidence that was not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.  *Id.*  A party seeking reconsideration pursuant to Rule 59(e) is not permitted to present arguments, theories, or evidence that could have been presented prior to the issuance of the judgment.  *Id.*  Similarly, if a party relies on newly discovered evidence, "the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Id.* (Internal quotations and citations omitted).

*B. Summary Judgment Standard*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49, (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

**III. ANALYSIS**

*A. AlliedBarton's Duty*

In this action for negligence, Plaintiffs must show that (1) Defendants owed a duty of care to Plaintiffs, (2) Defendants breached the duty by a negligent act or omission, (3) Defendants' breach was the actual and proximate cause of Plaintiffs' injury, and (4) Plaintiffs suffered an injury or damages. *Madison v.Babcock Center*, *Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). The court is required to determine whether, as a matter of law, Defendants owe Plaintiffs a duty. *Id.* Generally, there is no duty to warn a third party of danger; however, where the defendant voluntarily undertakes a duty, South Carolina law provides an exception. *Id.* Additionally, "an affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Id.* at 656-57. Where there is no legally recognized duty, a defendant is entitled to judgment as a matter of law. *Id.* at 656.

AlliedBarton contends that the court committed clear error by finding that AlliedBarton owed Plaintiff Laura Moise a duty as a matter of law. Specifically, AlliedBarton contends that the scope of its duty was limited by the security contract between AlliedBarton and Mall Defendants. According to AlliedBarton, the security contract did not impose upon AlliedBarton the duty to install security cameras or perform any duties not specifically mentioned in the contract. Plaintiffs contend that AlliedBarton voluntarily contracted to perform general security duties at the mall, which were breached.

Plaintiffs assert that AlliedBarton owed Plaintiffs a duty under a "voluntary undertaking" theory of liability. In South Carolina,

> one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if (a) his failure to exercise such care increases the risk of such

>harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Madison v.Babcock Center, Inc.*, 638 S.E.2d 650, 657 (S.C. 2006). Evidence of the scope of the voluntary undertaking can be provided by contractual evidence, *id.* at 137, or other evidence such as prior conduct and internal memoranda, *see e.g., Vaughan v. Town of Lyman*, 635 S.E.2d 631, 637-38 (S.C. 2006) (finding there was a general issue of material fact regarding a voluntary undertaking of maintenance of town sidewalks where there were references to sidewalk maintenance in town minutes). The existence of a duty pursuant to a voluntary undertaking theory becomes a mixed question of law and fact if there are any factual issues regarding whether the defendant is actually a volunteer. *Id.* at 637.

In a similar case, the District of South Carolina, interpreting South Carolina law, determined that AlliedBarton did not owe a duty to an assault victim who was visiting a hospital where AlliedBarton undertook security duties. *Hammond v. AlliedBarton Sec. Servs., LLC*, Civil Action No. 3:10-cv-02441, 2011 WL 5827604 (D.S.C. Nov. 16, 2011). In reaching its conclusion, the court determined that the only duties AlliedBarton voluntarily undertook were those set forth in the contract between AlliedBarton and the hospital. *Id.* at *5. In that case, the plaintiff asserted that AlliedBarton breached its duty by not offering to escort her to the parking lot, by not patrolling the parking lot where she was attacked at 1:00 a.m., and by not constantly monitoring the CCTVs. *Id.* at *3. However, the court noted that the security agreement and the Post Orders only required security guards to provide an escort to guests when asked; vary the time and route of their patrol; and monitor the CCTVs at least one hour per night. *Id.* at *3, 5. Thus, in *Hammond*, the court found that AlliedBarton had limited duties based on the desires of

5

its employer, and was only required to exercise due care in providing the security services that it contracted with the hospital to provide. *Id.* at *6.

Here, as in *Hammond*, it is clear that there was a voluntary undertaking by AlliedBarton and that the scope of the undertaking is defined by the contract between AlliedBarton and Mall Defendants. AlliedBarton urges this court to adopt the interpretation of the contract accepted by the parties to the contract. However, this court is required to "ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009). Where the contract's language is unambiguous, the court relies on the plain meaning of the language to determine the effect of the contract. *Duncan v. Little*, 682 S.E.2d 788, 790 (S.C. 2009). If the contract is deemed ambiguous, the court must determine the parties' intentions from the evidence presented. *Id.* Whether a contract's language is ambiguous is a question of law. *McGill*, 672 S.E.2d at 574. A contract is ambiguous where the language is reasonably capable of being understood in more than one way. *Hawkins v. Greenwood Development Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). In order for this court to adopt the interpretation of the contract that AlliedBarton urges, as defined through deposition testimony, this court would have to find that the contract between AlliedBarton and the Mall Defendants is ambiguous.

The security agreement states that AlliedBarton is to provide security services pursuant to the terms of the agreement. The agreement indicates that security officers at the property are responsible for "patrol, incident response, preliminary investigation, access control duties, inspection, customer assistance, special assignment, and reporting." ECF No. 96-5 at 1 ¶ I.3. Pursuant to the agreement, AlliedBarton was to produce a "comprehensive 'Security

Orders—Policy and Procedures' manual for each Property, which shall include specific standard post orders." ECF No. 96-5 at 2 ¶ I.6.  AlliedBarton was required to recommend the proper level of staffing deemed necessary to provide "full and adequate Security Services to the Property." ECF No. 96-5 at 4 ¶ II.5. AlliedBarton was also required to conduct site visits and provide a summary of local crime statistics to the property manager.  ECF No. 96-5 at 2  ¶ I.11. AlliedBarton was required to develop annual goals and objectives to address mall specific security issues and then review the plan with the property manager on a quarterly basis.  ECF No. 96-5 at 3 ¶ I.12.  Based on the plain language of the contract,  AlliedBarton's responsibilities pursuant to the contract and Policy and Procedures' manual are broad, but clear and subject to only one interpretation.  Thus, the court finds that the security agreement between AlliedBarton and Mall Defendants is not ambiguous.

The court further finds that, unlike *Hammond*, the scope of AlliedBarton's duty under the contract is not limited to specific, discrete tasks. In *Hammond*, AlliedBarton was hired by a hospital "to take care of some of [the hospital's] security and maintenance needs," including patrolling the area, monitoring the CCTVs one hour per night, and providing escort services as requested.  *Hammond*, 2011 WL 5827604 at *5.  Additionally, AlliedBarton offered to provide additional security services by recommending that the hospital employ an additional security guard to monitor the parking lot at night, but the hospital rejected the offer.  *Id.*  Here, AlliedBarton is responsible for recommending appropriate staff levels.   Although Mall Defendants have to agree to the recommendation, AlliedBarton's recommendation is "deemed a material representation" of the appropriate staff level needed to provide full and adequate security services. *See* ECF No. 96-5 at 4 ¶ II.5 Additionally, the court in *Hammond* did not

7

address whether AlliedBarton was responsible for conducting site visits, tracking crime statistics, or developing a plan to address mall specific security issues as AlliedBarton is required to do here. Those duties, as outlined in the contract, indicate that AlliedBarton contracted to perform general security duties on behalf of Mall Defendants.  This court finds that, pursuant to the contract, the scope of AlliedBarton's voluntary undertaking is broad and not limited by the procedures outlined in the Security Orders manual.  Accordingly, because AlliedBarton voluntarily assumed general security duties at the mall, AlliedBarton is required to exercise due care in the performance of those duties for the benefit of mall invitees.

Furthermore, the court finds that, contrary to AlliedBarton's arguments, the contract does not foreclose the possibility that AlliedBarton could be required to install, or at least, recommend the installation of security cameras.  Although the contract does not specifically address the installation of security cameras, the contract does require AlliedBarton to develop a plan to address mall-specific security issues.  However, the issue regarding whether AlliedBarton is required to install, or recommend the installation of, cameras is a factual issue to be determined by the jury when considering whether AlliedBarton breached its duty to Plaintiffs. This court merely finds that, as a matter of law, by voluntarily undertaking to provide general security duties at Columbiana Centre, AlliedBarton had a duty to Plaintiffs to make sure the mall was reasonably secured.  Therefore, this court properly determined that AlliedBarton was not entitled to summary judgment as a matter of law regarding AlliedBarton's duty to Plaintiffs. This court's refusal to grant summary judgment in favor of AlliedBarton was not in error.

*B.  Breach of Duty*

Defendants assert that this court erred when it found that Defendants were not entitled to judgment as a matter of law with regard to whether Defendants breached their duty to Plaintiffs. Specifically, Defendants contend that Plaintiffs failed to present any evidence to satisfy the balancing test set forth in *Bass v. Gopal*, 716 S.E.2d 910 (S.C. 2011).

In *Bass*, the South Carolina Supreme Court adopted a balancing test to determine whether a business owner has a duty to protect its invitees from the criminal acts of third parties. Under *Bass*, courts must determine 1) if the crime was foreseeable, and 2) given the foreseeability of the crime, the economically feasible security measures required to prevent such harm. The presence or absence of prior criminal incidents is a significant factor in determining the amount of security required by a business owner. *Bass*, 716 S.E.2d at 915. A determination of the reasonableness of a business owner's security measures will generally be identified by an expert. *Id.* at 917. Defendants contend that because Plaintiffs' expert failed to discuss the reasonableness of the security measures at the mall, Plaintiffs cannot satisfy the *Bass* balancing test.

In *Bass*, although the court determined that the plaintiff presented enough evidence to show that his assault at the hotel was foreseeable, the court found that the security measures in place were not unreasonable given the risk. *Id.* at 916. The hotel was located in a high crime area, but there was no evidence of prior crimes on the premises. *Id.* The expert in *Bass* opined that the premises were well lit and that the hardware on the door met security industry standards. *Id.* at 917. The expert noted that a closed circuit camera and a security guard would have been reasonable in light of the risk, but that was based on the criminal incident data gathered after the assault on the plaintiff took place. *Id.* When questioned about the reasonableness of installing a

camera or hiring a security guard when there were no prior criminal incidents, the expert determined that there was not enough data to indicate that the expenditure of funds on extra security services was necessary. *Id.* The court found that the plaintiff failed to provide evidence that the hotel should have expended more resources to curtail a probable risk of criminal activity. *Id.*

In *Lord v. D&J Enterprises, Inc.*, 757 S.E.2d 695 (S.C. 2014), where the business owners knew there had been a string of robberies in the vicinity and the perpetrator had not been apprehended, the court applied the *Bass* balancing test. The court found persuasive the expert's testimony stating that a security guard placed at the entrance of the business would have prevented the crime. *Lord*, 757 S.E.2d at 702. The court concluded that the expert's testimony presented a question of fact for the jury. *Id.* (citing Louis A. Lehr, Jr., 1 Premises Liability 3d § 4:7 (Supp. 2013) ("A typical case is one in which an expert testifies that the presence of a security [guard] would have prevented the crime. Courts have held that such expert testimony is sufficient to make a fact question for the jury.")).

Here, unlike *Bass*, there had been previous criminal incidents at the mall; however, there is no indication that Defendants were aware of recent criminal activity in the area prior to Plaintiff Moise's attack, as in *Lord*. Over the four year period between 2007 and 2011, crime reports indicate over a dozen assault calls and two strong arm robbery reports at the mall premises. ECF No. 97-7. There were also reports of sex-related offenses including reports of a "Peeping Tom" and an incident involving forced fondling. *Id.* Detailed incident reports provided by Defendants indicate that about eleven assaults occurred at the mall between 2007 and 2011, but were mostly between people who were familiar with each other. *See* ECF No.

100.   Although none of the crimes involved sexual assault by a stranger, there is enough evidence to indicate that the mall has some history of violent crime.  Plaintiffs' expert was able to review this information along with other documents and literature on risk analysis and crime prevention.  *See* ECF No. 96-9 at 1.  Plaintiffs' expert also visited the mall and inspected the restroom and restroom corridor where the crime took place.  ECF No. 96-9 at 1-2.  As a result, the expert indicated that the restroom area where Plaintiff Laura Moise was attacked is secluded. ECF No. 96-9 at 2 ¶ 1. The expert further indicated that such areas with "immediate egress to the outside of a building provide a perpetrator with an ideal environment in which to commit a crime."  ECF No. 96-0 at 3 ¶ 12.  The expert also concluded that had the area been "equipped with proper closed-circuit television coverage that was clearly discernible by a potential perpetrator, it is less likely that this crime would have occurred."  ECF No. 96-9 at 3 ¶ 15. Although Plaintiffs' expert did not make a specific finding with regard to the economic feasibility of installing security cameras, the expert did conclude that the presence of a camera would have prevented the crime.  Such a conclusion satisfied the South Carolina Supreme Court in *Lord* when it applied the *Bass* balancing test.  Accordingly, the conclusion of Plaintiffs' expert satisfies this court and is sufficient to make a fact question for the jury.  Thus, this court did not err when it declined to grant summary judgment in favor of Defendants on this issue.

## IV. CONCLUSION

For the reasons stated herein, the Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e) filed by Defendants Columbiana Centre, LLC and General Growth Properties, Inc.,  ECF No. 116, is **DENIED**.  The Motion to Alter or Amend Judgment filed by AlliedBarton

Security Services, LLC, ECF No. 117, is also **DENIED**.

      **IT IS SO ORDERED.**

                                              /s/ Margaret B. Seymour
                                              Margaret B. Seymour
                                              Senior United States District Judge

August 26, 2015
Columbia, South Carolina